IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY BARASKY,             :
   Plaintiff              :
                             :      No. 1:20-cv-2457
   v.                     :
                             :      (Judge Rambo)
BRAD SHOEMAKER, *et al.*,    :
   Defendants             :

# MEMORANDUM

Presently before the Court are the motion to dismiss (Doc. No. 20) filed by Defendants Brad Shoemaker ("Shoemaker"), Ryan Barnes ("Barnes"), and Chris Ebner ("Ebner"), as well as the motion to compel (Doc. No. 24) filed by *pro se* Plaintiff Anthony Barasky ("Plaintiff"). The motions are fully briefed and ripe for disposition.

## I. BACKGROUND

Plaintiff , who is currently incarcerated at the Lycoming County Prison ("LCP") in Williamsport, Pennsylvania, initiated the above-captioned action on December 30, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants. (Doc. No. 1.) In March 2020, Defendant Shoemaker issued a memorandum cancelling visitation at LCP because of the COVID-19 pandemic. (*Id.* ¶ 12.) Plaintiff avers that he was committed to LCP on October 2, 2020. (*Id.* ¶ 9.) On October 6, 2020, Plaintiff had a contact visit with Parole Officer Jason Lamay "pertaining to a detention hearing scheduling." (*Id.* ¶ 10.) On November 23, 2020,

Plaintiff had a non-contact visit "via the visitation phone system" with his attorney. (*Id.* ¶ 11.) Plaintiff objected, citing attorney-client privilege, and was told by Defendant Barnes that his phone calls were not being monitored. (*Id.*) On December 14, 2020, Plaintiff submitted a request slip seeking a mental health evaluation, and he had the mental health evaluation on December 16, 2020. (*Id.* ¶¶ 13-15.)

Based on the foregoing, Plaintiff alleges that Defendants violated his First Amendment rights by cancelling all visitation. (*Id.* ¶ 18.) Plaintiff also alleges that Defendants violated his Eighth and Fourteenth Amendment rights. (*Id.* ¶¶ 19-20.) Plaintiff seeks declaratory and injunctive relief, as well as damages. (*Id.* ¶¶ 24-31.)

## II. MOTION TO COMPEL

### A. Standard of Review

A party who has received evasive or incomplete discovery responses may seek a Court Order compelling disclosures or discovery of the materials sought. Fed. R. Civ. P. 37(a). "The moving party must demonstrate the relevance of the information sought to a particular claim or defense." *Montanez v. Tritt*, No. 14-cv-1362, 2016 WL 3035310, at *2 (M.D. Pa. May 26, 2016). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Id.* (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

2

It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the Court's discretion. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). The Court's decision regarding the conduct of discovery, including whether to compel disclosure of materials sought in discovery, will only be disturbed upon a showing of an abuse of discretion. *See Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) provides for a broad scope of discovery. Consequently, courts often – and appropriately – liberally apply discovery rules. *See, e.g., Clements v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing *Great W. Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994)). Nonetheless, a "valid claim[] of relevance or privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1). *See McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 192-93 (M.D. Pa. 2011).

**B.** **Discussion**

In his motion to compel, Plaintiff seeks an Order compelling Defendants to provide more complete responses to three (3) of his discovery requests. Plaintiff first seeks a copy of his professional visitation log. (Doc. No. 24 at 3.) In response, Defendants state that "since the date the present motion was filed, [they] have produced the professional visitors log" that Plaintiff seeks. (Doc. No. 26 at 5; Doc. No. 26-3.) Plaintiff's motion to compel will, therefore, be denied as moot as to this discovery request.

Plaintiff also seeks the "policy statements, protocols, and/or procedures of the prison only pertaining to its mitigation of Covid-19." (Doc. No. 24 at 2.) Plaintiff claims that his complaint is "ground upon the regulations, protocols, and procedure(s) that were and are being imposed and if they violated the right of the plaintiff." (*Id.* at 3.) As an initial matter, this was not a discovery request included in either of Plaintiff's requests for production. (*See* Doc. Nos. 26-1, 26-2.) Rather, Plaintiff sought production of all records or notes of staff meetings pertaining to COVID-19 protocols and procedures. (Doc. No. 26-1 at 5.) In response, Defendants objected, stating:

> Objection. The answering defendants object to the extent this request: 1) exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure; 2) seeks privileged information pursuant to the Attorney-Client Privilege and/or Attorney Work Product Doctrine; 3)

4

is unduly burdensome and oppressive, or may require the answering defendants to conduct an unreasonable investigation; 4) is vague, ambiguous, overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence; 5) is not proportionate to the needs of the case; and/or 6) seeks confidential information in the context of a request by an inmate to the administrators of a correctional facility.

(*Id.*) The Court agrees with Defendants that Plaintiff's request is disproportionate. Plaintiff's complaint takes issue with the cancellation of visitation during the COVID-19 pandemic and not LCP's entire protocol and procedure in response. Plaintiff's motion, therefore, will be denied as to this request.

Finally, Plaintiff seeks a copy of his mental health evaluation. (Doc. No. 24 at 3.) He asserts that he is claiming that his Eighth Amendment rights were violated because the lack of visitation caused "extreme indignities, severe emotional distress, pain and suffering." (*Id.*) In response, Defendants stated that this request exceeded the permissible scope of discovery, was "vague, ambiguous, overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence," and was "not proportionate to the needs of the case." (Doc. No. 26-1 at 6.) The Court agrees with Defendants. Plaintiff's complaint does not raise any claims regarding the adequacy of his medical or mental health treatment. Plaintiff's motion to compel, therefore, will be denied as to this discovery request.

## III. MOTION TO DISMISS

### A. Legal Standards

#### 1. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed.

7

2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### 2. Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### B. Discussion

#### 1. First Amendment Claim

Plaintiff first alleges that Defendants violated his First Amendment rights by prohibiting visitation during the COVID-19 pandemic. "[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Supreme Court, however, declined to hold or imply that "any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.* "The Court dd not further define the contours of this right in *Overton*, turning instead to whether the restrictions on visitation were rationally related to legitimate penological interests." *Cordero v.*

9

*Warren*, 612 F. App'x 650, 653 (3d Cir. 2015) (citing *Overton*, 539 U.S. at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987))). "Due to the highly contagious and potentially deadly nature of COVID-19, [Plaintiff] has not alleged sufficient facts to raise an inference that the visitation restrictions imposed by [Defendants] . . . were unreasonably related to a legitimate goal of protecting the safety and health of visiting family members, staff and inmates, including him." *Pape v. Cook*, No. 3:20-cv-1324, 2021 WL 2186427, at *6 (D. Conn. May 28, 2021). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment claim concerning the denial of visitation.

### 2. Eighth Amendment Claim

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated in party on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination

10

. . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and *Rhodes*, 452 U.S. at 347).

Plaintiff alleges that the ban on visitation during the COVID-19 pandemic violates his Eighth Amendment rights because it causes extreme emotional distress and mental anguish. (Doc. No. 1 at 4.) Plaintiff avers that he requested and received a mental health evaluation in December 2020. (*Id.* at 3.) In *Overton*, the Supreme Court concluded that a two (2)-year ban on visitation privileges for inmates with two (2) substance abuse violations did not violate the Eighth Amendment. 539 U.S. at 136-37. The Court recognized that the restriction did not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or

safety." *Id.* at 137. Moreover, it did not involve "the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Id.* The Court recognized that visitation restrictions "undoubtedly make the prisoner's confinement more difficult to bear." *Id.* at 136. The Court also noted that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.* at 137.

Like the regulation at issue in *Overton*, this Court agrees that the temporary ban on visitation imposed by LCP in response to the COVID-19 pandemic does not violate Plaintiff's Eighth Amendment rights. The Court recognizes that the inability to have visitors has undoubtedly affected Plaintiff's mental health and has made his confinement "more difficult to bear." *Id.* at 136. The visitation restrictions, however, are applicable to all inmates and are not permanent. Moreover, the restriction does not involve Defendants' deliberate indifference to the risk of any pain or injury that might occur. The Court, therefore, will grant Defendants' motion to dismiss with respect to his Eighth Amendment claim.

### 3. Fourteenth Amendment Claim

Finally, Plaintiff maintains that Defendants violated his Fourteenth Amendment substantive due process rights by making him participate in a non-

contact visit with his attorney using the phones in the visitation room that are monitored and recorded. (Doc. No. 1 at 4.) "Courts within this Circuit have recognized that prisoners have a right to confidential communication with their attorney." *Talley v. Varner*, No. 3:17-cv-965, 2018 WL 7890011, at *5 (M.D. Pa. Dec. 10, 2018) (collecting cases), *Report and Recommendation adopted*, 2019 WL 1405403 (M.D. Pa. Mar. 28, 2019), *aff'd*, 786 F. App'x 326 (3d Cir. 2019). This right focuses on the "conditions under which the inmate[] [was] permitted to meet with [his] attorney[]." *Telepo v. Martin*, No. 3L08-cv-2132, 2019 WL 2476498, at *7 (M.D. Pa. Aug. 12, 2009, *aff'd*, 359 F. App'x 278 (3d Cir. 2009).

In his complaint, Plaintiff alleges that on November 23, 2020, he met with his attorney "in the form of a non-contact visit via the visitation phone system." (Doc. No. 1 ¶ 11.) Plaintiff "objected to this[,] citing violations of attorney to client privileges." (*Id.*) He suggests that Defendants made him "participate in visitation with his attorney over phones in the visitation room that are being monitored and recorded." (*Id.* ¶ 21.) Plaintiff filed a grievance, and Defendant Barnes responded that attorney/client contact had not been restricted and that "[p]hone recordings in the visitation booths have been turned off." (*Id.* at 7.)

As noted *supra*, when considering the plausibility of a claim for purposes of a motion to dismiss, this Court must accept the plaintiff's factual allegations as true

13

and draw all reasonable inferences in his favor. *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court considers both Plaintiff's allegations and any exhibits attached to his complaint. *Id.* "And if [Plaintiff's] own exhibits contradict [his] allegations in the complaint, the exhibits control." *Id.* at 112. Plaintiff's own exhibit contradicts his allegations, as the exhibit sets forth that attorney/client non-contact visits were not monitored in any way. Plaintiff's exhibit, therefore, controls. Given that the exhibit indicates that no recording and monitoring of Plaintiff's non-contact visit with his attorney occurred, the Court must conclude that Plaintiff has failed to state a plausible claim regarding violations of his right to confidential communications with his attorney. The Court, therefore, will grant Defendants' motion to dismiss with respect to this claim.

### 4. Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing discussion, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss (Doc. No. 20) and deny Plaintiff's motion to compel (Doc. No. 24). Plaintiff will not be permitted to file an amended complaint in this matter. An appropriate Order follows.

s/ Sylvia H. Rambo  
United States District Judge

Date: June 3, 2021